IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLENN H. OLAY, | |
|       Plaintiff, | |
|     v. | Civil Action No. 04-266  Erie |
| ………………………………………….  | |
| HENRY M. HEARNE, | |
|       Plaintiff, | |
|     v. | Civil Action No. 04-276  Erie |
| ………………………………………….  | |
| PAUL L. PLYLER, | |
|       Plaintiff, | |
|     v. | Civil Action No. 04-277  Erie |
| ………………………………………….  | |
| WILLIAM F. LUNDER, | |
|       Plaintiff, | |
|     v. | Civil Action No. 04-278  Erie |
| ………………………………………….  | |
| LYNN A. RHODES, | |
|       Plaintiff, | |
|     v. | Civil Action No. 04-279  Erie |
| ………………………………………….  | |
| TERRY K. ROCKWELL, | |
|       Plaintiff, | |
|     v. | Civil Action No. 04-280  Erie |
| ………………………………………  | |
| | |
| MOTION CONTROL INDUSTRIES, | |
| DIVISION OF CARLISLE CORPORATION, | Judge Maurice B. Cohill, Jr. |
| RETIREMENT PLAN FOR BARGAINING | |
| UNIT EMPLOYEES OF MOTION | |
| CONTROL INDUSTRIES, DIVISION OF | |
| CARLISLE CORPORATION, | |
| | |
|       Defendants. | |

**BRIEF IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Plaintiffs respectfully submit this Brief in support of their Motion for Summary Judgment. The above-captioned actions are lawsuits pending before the Court which were filed by former employees of defendant, Motion Control Industries, Division of Carlisle Corporation (hereinafter "Motion Control") against Motion Control and the Retirement Plan for Bargaining Unit Employees of Motion Control Industries, Division of Carlisle Corporation (the "Retirement Plan").

The Court summarized the procedural status of these cases in its March 7, 2006, Order:

> In all [ ] cases, the plaintiffs seek disability benefits under the Retirement Plan for Bargaining Unit Employee of Motion Control Industries. Each of the [ ] related disability claim cases present separate and independent factual issues regarding the nature, timing and extent of each plaintiff's alleged disability, which requires separate factual discovery. However, counsel for the parties have conferred and agreed that the seven related disability cases appear to have a number of common legal issues.
>
> *     *     *
>
> …, early in these cases the parties acknowledged that there is a common threshold issue to all of the cases that may be dispositive of the outcome. They explained the threshold issue as centering on whether the Plan has a legal obligation to consider a participant for a disability pension when the participant's employment with the Defendant Employer [Motion Control] was terminated at or before the date of disability due to a permanent plant closing.     *     *     * …, from this date forward the parties are required to file separate pleadings at their proper case numbers. Such pleadings, to the extent they are essentially the same may be filed, as this Order is, with a caption listing each individual case and number.

March 7, 2006 Order, pp. 2-3.

Accordingly, Plaintiffs submit the instant brief in support of their motions for summary judgment.

2

**II.     ARGUMENT**

    **A.     Standard of Review on a Motion for Summary Judgment**

A party is entitled to summary judgment when the record demonstrates no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Romero v. SmithKline Beecham*, 309 F3d 113, 117 (3rd Cir. 2002); *citing:*  Fed.R.Civ.P. 56.  Where "the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial'".  *Rendulic v. Kaiser Aluminum & Chemical Corporation*, 166 F.Supp.2d 326, 332; *quoting:*  Matsushita Electrical Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L.Ed.2d 538, 106 S. Ct. 1348 (1986).

    **B.     Plaintiff's Motion for Summary Judgment must be granted because the undisputed material facts demonstrate that, as a matter of law, Participants are eligible for disability retirement benefits so long as their disability arose prior to the expiration of the collective bargaining agreement between Local 502 and Motion Control.**

This is a lawsuit filed against the Plan and Motion Control by the plaintiffs to recover disability retirement benefits.  The Plan is indisputably an "employee pension benefit plan" as that term is defined by Section 2(A) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1002(2)(A), and is therefore governed by the provisions of ERISA.  Plaintiffs' claims are brought pursuant to Section 502(a)(1)(B) of ERISA, which authorizes a plan participant to file a lawsuit in federal court to recover benefits due him under the plan.

A participant's eligibility for a disability retirement benefit is defined by the Plan Documents as follows:

> If the employment of a Participant, but not an Inactive Participant, terminates because of a Disability after he attains Disability Retirement Age, he shall be eligible to receive a disability

> retirement benefit under the Plan, in accordance with and subject to the provisions of the Plan.

Appendix, Exhibit 2, §4.3(a), p. 17.

Therefore, in order to be eligible for a disability retirement benefit, one must demonstrate that: 1) he is a Participant; 2) his employment terminated "because of a Disability"; and, 3) disability occurred after he attained "Disability Retirement Age".

There is no dispute that plaintiffs, by virtue of their employment with Motion Control in job classifications represented by IUE/CWA Local 502, AFL-CIO ("Local 502"), are Plan participants.

Likewise, there can be no dispute that plaintiffs had attained "Disability Retirement Age" under the Plan. As modified by the 2000 Supplement, the term "Disability Retirement Age" is defined to mean "Incurs a Disability after completing ten or more years of Vesting Service" in the Plan. Appendix, Exhibit 3, Section (j)(3). Plaintiffs had at least twenty-four years of vesting service with the Plan as of January 11, 2002. The onset date of all of the plaintiffs' disabilities were on or after January 11, 2002.

Therefore, the issue, which the parties' identified as the threshold issue of all of these cases, is whether the plaintiffs' employment terminated "because of a disability" when the onset date of their disability was on or after the last day work was performed at the Ridgway facility on January 11, 2002, but before the expiration of the collective bargaining agreement between Local 502 and Motion Control on June 27, 2003.

Before this issue is examined, the Court must resolve two procedural issues: 1) whether plaintiff's claims are properly before the court and, 2) if they are, whether the Court should apply a *de novo* or arbitrary and capricious standard of review to plaintiffs' claims.

> 1. <u>Plaintiffs should be excused from the exhaustion requirement because further resort to the administrative process prior to the filing of these actions would have been futile</u>.

Section 503 of ERISA requires all employee benefit plans, including the Plan, to:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review

29 U.S.C. § 1133.

When a participant seeks to initiate a claim for benefits, Section 503 requires the Plan to consider that claim, and if the claim is denied, to notify him in writing of the specific reasons for denial, and afford a "full and fair" administrative review. Once that review has been exhausted, the participant, if still aggrieved, is free to initiate a claim in federal court under Section 502(a)(1)(B) of ERISA. 29 U.S.C. §§1132(a)(1)(B).[1] However, a participant may not bring an action in federal court under Section 502(a)(1)(B) without first exhausting the plan's internal claims procedure. *Berger v. Edgewater*, 911 F.2d 911, 916 (3d. 1990).

The Plan contains specific provisions intended to comply with the provisions of ERISA Section 503 and the applicable regulations. Appendix, Exhibit 2, 1997 Document, § 7.9(b). These provisions outline a two-step process whereby a participant first makes an application for benefits. After being notified, within a certain timeframe, that his application has been denied,

---

[1] The Department of Labor has promulgated extensive regulations regarding a plan's obligations under Section 503 of ERISA. *See:* 29 U.S.C. § 2560.503-1. These regulations establish timelines by which a plan must respond and process claims for a variety of employee benefits, what types of notices they must provide participants, what those notices must contain, and what rights participants must be afforded throughout the process. Since there was no administrative review in this case, there is no utility to reviewing these obligations at length.

the participant may then initiate an appeal to a Committee,[2] which is to review the claim and render a final, written determination.

It has been observed, however, that "[a]lthough the exhaustion requirement is strictly enforced, courts have recognized an exception when resort to the administrative process would be futile." *Berger*, 911 F.2d at 916.  In *Berger,* the Third Circuit upheld the trial court's determination that three of the plaintiffs did not have to resort to the plan's administrative remedies prior to suing to recover a "70/80 retirement" benefit because doing so would be futile:

> The Plan's administrative procedures required the Pension Board to notify a claimant in writing of the specific reasons for the denial of a claim. Although the three employees failed to make written requests for benefits, this does not excuse [the defendant company]'s failure to comply with the Plan's administrative procedures. It is clear that [plaintiffs] Berger, Dallas and Wagner made their desire for a 70/80 retirement plain to the responsible company officials. In addition, it is clear that the company had adopted a policy of denying all applications for 70/80 retirement. [Citation to the record omitted]. We agree with the district court that [the defendant company]'s blanket denial of 70/80 retirement… and [the defendant company]'s failure to comply with the Plan's administrative procedures weigh in favor of applying the futility exception to [plaintiffs] Berger, Dallas and Wagner. Given these circumstances, any resort by these employees to the administrative process would have been futile. Thus, the district court was correct in excepting these three employees from the exhaustion requirement.

*Berger*, 911 F.2d at 917.[3]

In *Berger*, the Court held that the plaintiffs did not have to exhaust their administrative remedies because doing so was futile where the "responsible company officials" had been made aware of the plaintiffs desire to receive a retirement benefit, had failed to process those claims in

---

[2] The Committee is defined as the "Carlisle Corporation Pension and Insurance Committee" by Section 2.1(i) of the 1997 Document, with powers and duties outlined in Section 7.3. Exhibit 2, 1997 Document, §§ 2.1, 7.3.

[3] The Court further affirmed the trial court's decision to dismiss a fourth plaintiff's claim for benefits because that plaintiff "never even asked for the 70/80 retirement". *Id.*

6

accordance with the plan's administrative procedures, and where the company had adopted a blanket policy of denying such claims. The cases before the Court fit within the fact pattern of *Berger* and the same outcome should follow.

On March 23, 2004, Robert A. Eberle, Esquire, attorney for plaintiffs and attorney for Local 502, wrote Richard A. Perhacs, Esquire, who represented Motion Control and who works for the same law firm representing Motion Control and the Plan in this litigation. Attorney Eberle wrote:

> Dear Rich:
>
> I am writing to you in connection with our earlier discussions regarding your client, Motion Control Industries. My firm has been retained to represent Messrs. Rockwell and Davido <u>regarding their claims for disability pensions with Motion Control</u>. Inasmuch as you and I have spoken on a number of occasions about this subject and the various other issues pertaining to Motion Control and IUE/CWA Local 502, <u>I want to communicate separately on behalf of these individual clients</u>.
>
> <u>As I have previously mentioned, I was contacted by these two gentlemen and other former employees of Motion about their possible claims for disability pensions</u>.
>
> \*   \*   \*
>
> Regarding Mr. Rockwell and Mr. Davido, please be advised as follows.
>
> Mr. Rockwell began his employment with Motion Control on April 21, 1969. His social security number is ▮▮▮▮▮▮▮▮▮, and his date of birth is ▮▮▮▮▮▮▮▮▮ His current address is 797 Highland Road, Kane, PA 16735. Mr. Rockwell's last day of work was January 11, 2002, and he received WARN Act pay through March 16, 2002. In May 2002 Mr. Rockwell became disabled as the result of heart disease. He subsequently qualified for Social Security disability benefits in July 2002. <u>Mr. Rockwell apparently made a verbal request for the paperwork to initiate a claim for disability pension benefits with Motion Control, but he was advised by Robin E. at Motion Control that he was not eligible for</u>

the disability pension because he was not working for Motion Control at the time he became disabled.

Mr. Davido began his employment with Motion Control on November 11, 1978. His social security number is ███████2, and his date of birth is ███████. His current address is 243 Ash Street, Ridgway, PA 15853. Mr. Davido's last day of work was January 11, 2002, and he received WARN Act pay through March 16, 2002. On May 9, 2002, Mr. Davido suffered a heart attack that left him disabled from working. He applied with Motion Control for a disability pension, and he actually began receiving benefits. He was subsequently verbally informed by Norm Tarbell that he had mistakenly received the benefits, and those benefits were discontinued. I am not aware of any actual determination sent to Mr. Davido regarding the decision to discontinue. He informs me that he was told by Mr. Tarbell that he was not eligible for a disability pension because he was not actively employed with Motion Control at the time he became disabled.

I am aware that there are other individuals in similar circumstances with each of my clients. In other words, there is at least one other person who began receiving benefits and then saw those benefits discontinued (similar to Mr. Davido), and there are others who became disabled and then were verbally informed by the Company that they were not eligible for disability pension benefits (similar to Mr. Rockwell). However, to date I have not been retained by any of those individuals, although I expect that will change in the near future.

In view of the information set forth above, would you kindly review this matter with your client. I have two questions. First, will Motion Control reconsider the decision to deny disability pension benefits to either or both of these two individuals based on the information set forth above? Second, in the event the Company is unwilling to alter its position, will the Company require these two individuals to bring administrative claims before pursuing a remedy in federal court under ERISA? Both individuals have authorized me to proceed in the most appropriate venue. If the Company wants these cases addressed in the first instance through the administrative process, then I will submit claims for both clients. If the Company were willing to agree that pursuit of the administrative process at this stage (given the apparent number of individuals in the same situations as these two claimants) would be futile, then I would proceed directly with an ERISA lawsuit of their behalf.

Appendix, Exhibit 5.[4]

Attorney Perhacs responded to Attorney Eberle's letter on April 20, 2004 in relevant part by stating:

> Mr. Rockwell's situation is identical [to Mr. Davido's], i.e., the disability began well after employment ended. <u>The plant was closed and all employees terminated on March 16, 2002</u>. As your letter recites, both of these individuals became disabled in May, 2002, almost two months after their employment ended.
>
> I also enclose for your information a copy of the relevant portion of the pension plan. As you can see, Section 4.3(a) clearly provides that employment must terminate "because of disability." In this case the employment of your clients, along with the employment of everyone else at the plant, terminated well before the disabilities arose. <u>In light of the language of the plan, which seems rather clear, the Company will not reconsider its position in this matter</u>.
>
> <u>I do not have authorization to waive any requirement that administrative claims be filed, so, if your clients are insistent on pursuing this despite the above information, you should proceed accordingly</u>.

Appendix, Exhibit 6. (Emphasis added).

Here, Motion Control makes it plain that any employee who became disabled after March 16, 2002 cannot be eligible for a disability pension benefit because their employment did not terminate "because of a disability". Motion Control goes on to state that they "will not reconsider its position", yet refuses to agree to waive the requirement to exhaust administrative remedies and further fails to identify what administrative steps would be appropriate at this point in time.[5]

---

[4] Don Davido died in the summer of 1994.

[5] This constitutes a violation of the Labor regulations regarding the administrative review of claims, which provide that an adverse benefit determination must be accompanied by a "description of the plan's review procedures". 29 C.F.R. § 2560.503-1(g)(1)(iv).

Neither did Motion Control answer Attorney Eberle's assertion that Motion Control refused to even send a pension benefit application to Rockwell, despite his efforts to request one. Olay and Hearne likewise had called Motion Control to request an application but were simply told that they were not eligible for a benefit, and no forms were sent. Plyler had actually applied for a disability pension benefit and received a written denial notice from Motion Control.

Attorney Eberle wrote another letter dated May 24, 2004 to Attorney Perhacs:

> Re:  Donald A. Davido, Jr., Terry K. Rockwell, James E. Clark, Henry M. Hearne, William F. Lunder, Paul L. Plyler, Lynn A. Rhodes and Glenn H. Olay[6]
> Disability Pension Claims With Motion Control Industries
>
> Dear Rich:
>
> I received your letter dated April 20, 2004, in response to my letter of March 23, 2004, regarding Don Davido and Terry Rockwell. <u>I have been contacted by the other individuals listed above because they also have claims for disability pensions with Motion Control. Although their individual circumstances vary somewhat, the common thread is that each individual has been informed by the Pension Plan Administrator's office that they do not qualify for a disability pension benefit because they were not actively working for Motion Control at the time the disability claim arose.</u> This is the same basis asserted in the cases of Davido and Rockwell.
>
> After I received your letter of April 20, 2004, I instructed Davido and Rockwell to once again request an application for benefits. <u>Rockwell informed me that he contacted the Plan Administrator's office on Monday, May 17, 2004, and they refused once again to provide him with an application for benefits. I am bringing this to your attention because there does not seem to be any reason to believe that further efforts to exhaust the administrative process are warranted. If there is something further that can be done, I am asking you to advise what that next step would be. Please note that whatever would be the next step, the other individuals listed above will also pursue that step</u>. If you require information regarding the circumstances surrounding the claims of the other individuals, please let me know and I will forward that information to you immediately.

---

[6] This letter was sent on behalf of all of the plaintiffs.

Your attention to this matter will be greatly appreciated.

Appendix, Exhibit 7. (Emphasis added).

Motion Control did not respond to Attorney Eberle's letter, and these lawsuits were subsequently initiated.

If this sequence of events does not fall squarely within the factual scenario that led the Court in *Berger* to conclude that it was futile for the plaintiffs to exhaust their administrative remedies, then there is no set of facts that will do so. Plaintiffs made their desire for a disability pension known to Motion Control through their own inquiries and through Attorney Eberle. They were individually calling Motion Control asking for pension applications. Their attorney wrote Motion Control explaining their claims and asking for either a waiver of the administrative process or direction as to the appropriate steps to take. No waiver was granted, but no direction as to the appropriate steps to take was given either, placing the plaintiffs on the twin horns of a dilemma. Further, Motion Control, in Attorney Perhacs' April 20, 2004, appeared to issue a blanket denial of all disability pension benefits if the disability arose after March 16, 2002.

Admittedly, essentially none of administrative requirements imposed by Section 503 of ERISA or Section 7.9(b) of the Plan took place prior to the filing of this lawsuit. But whose fault is that? It is hard to fathom what action the plaintiffs could have taken short of filing a lawsuit to address their claims for disability pension benefits after Attorney Eberle's May 24, 2004 letter bore no response. The substance of these claims should be addressed by the Court now, because given these circumstances further resort to the administrative process prior to the filing of these lawsuits clearly would have been futile.

        2.       <u>The District Court should review Plaintiffs' claims for pension benefits de novo</u>.

When a participant exhausts a plan's internal claims procedure, is still aggrieved, and files a Section 502(a)(1)(B) action to recover benefits, the first thing a district court must decide is the standard of review. In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court delineated two possible standards of review for a court to use when reviewing a plan administrator's determination regarding a participant's entitlement to employee benefits under the plan -- such claims must be reviewed under either a *de novo* standard of review or the arbitrary and capricious standard of review. *Id.,* 489 U.S. at 115. Under *Firestone,* "*de novo* review of a denial of benefits is appropriate only when a plan administrator has 'no discretionary authority to determine eligibility for benefits.'" *Romero v. SmithKline Beecham,* 309 F.3d 113, 118 (3d Cir. 2002); *quoting Firestone, supra.* If, however, the plan grants the plan administrator the authority to interpret the plan's terms and decide claims for benefits, a reviewing court may only rule against the plan if the administrator's determination was arbitrary and capricious. *Cefalo v. SmithKline Beecham,* 2000 U.S. Dist. LEXIS 22140*4 - *5 (W.D. Pa. 2000).

The Plan in this case grants discretionary authority to a pension Committee to administer the provisions of the Plan and to determine eligibility for benefits. Appendix, Exhibit 2, Plan, §7.1-§7.3. Therefore, under normal circumstances, this Court would review the Committee's decision denying plaintiffs' claims for benefits to determine whether it was arbitrary and capricious. If it was, plaintiffs would be awarded benefits, and if not, their suits would be dismissed.

This case, however, has taken a much different trajectory. The pension Committee authorized by the Plan to make final determinations of eligibility never reviewed these claims,

because the Plan refused to allow plaintiffs to make a claim in the first place.  Because no administrative review was performed, and because plaintiffs should be excused from exhausting their administrative remedies, this Court should review plaintiffs' claims *de novo*.  *Riggs v. A.J. Ballard Tire & Oil Company, Incorporated Pension Plan and Trust*, 1992 U.S. App. LEXIS 31134, 16 Employee Benefits Cas. (BNA) 1070 (4th Cir. 1992) ("When administrative exhaustion is excused, the trial court must determine the claimant's entitlement to benefits in the first instance."  *Id.*, 1992 U.S. App. LEXIS 31134, *6).

        3.    <u>Olay and Rhodes became disabled prior to March 16, 2002, and are eligible to receive a disability retirement benefit</u>.

Motion Control's basic argument is that a participant cannot receive a pension disability benefit if their disability arose after their employment was terminated.  In Motion Control and the Plan's Answers to Plaintiff's Interrogatories, they make it clear that in each case a disability pension benefit has been granted in the past, it was when the employee became disabled before employment was terminated.  Appendix, Exhibit 4.  In Answer to Interrogatory Number 2, Motion Control and the Plan identify two individuals (Recipients # 7 and 9) who were awarded disability pension benefits despite being terminated employees, because their disabilities pre-dated the date of their termination.  *Id*.

Furthermore, Motion Control and the Plan have admitted that plaintiffs' employment officially terminated on March 16, 2002, not the date production ceased at the Ridgway facility, but the date WARN Act pay and benefits expired.  This admission is in Attorney Perhacs letter dated April 20, 2004, stating "[t]he plant was closed and all employees terminated on March 16, 2002."  Appendix, Exhibit 6.  This admission is also in the enclosure to Attorney Perhacs' letter, a letter from Motion Control's Division HR Manager Norman E. Tarbell, Jr., to Don Davido, which states:

13

> The Ridgway facility was permanently closed on March 16, 2002. To qualify for a Disability Retirement, an employee had to have met the above criteria and retired before the date the facility closed.

Appendix, Exhibit 6.

By Motion Control and the Plan's admission, if an employee became disabled prior to March 16, 2002, they are eligible for a disability retirement benefit. Plaintiffs Olay and Rhodes both were determined to have a disability onset date of January 11, 2002, according to the Social Security Admininstration. Appendix, Exhibit 8. Accordingly, based on the argument advanced by Motion Control and the Plan, both Olay and Rhodes are eligible for a disability retirement benefit.

> 4. <u>Plaintiffs' employment did not terminate by virtue of the plant closing because plaintiffs maintained residual employment rights through June 27, 2003 under Local 502's collective bargaining agreement with Motion Control</u>.

The Plan Documents provide that an employee may receive a disability retirement benefit if, among other things, "the employment of a Participant", such as plaintiffs, "terminates because of Disability". Appendix, Exhibit 2, §4.3(a), p. 17. Motion Control argues that the plaintiffs' employment terminated on March 16, 2002, after WARN Act payments and benefits expired and the plant at the Ridgway facility closed. Motion Control argues that since plaintiffs' disabilities did not occur until after that date (with the exception of Olay and Rhodes), plaintiffs are not entitled to disability retirement benefits, as there employment did not terminate because of a disability but because the plant closed.

Significantly, the Plan Documents do not define "employment" nor do they specify when "employment" terminates. It has been observed at common law:

> A contract of employment which by its express terms is for a definite time or until a definite day presents, of course, no problem

>concerning its duration and termination. The employer has the implied right to discharge the employee for cause, but otherwise the employment cannot be terminated of right during the term of its existence as expressed in the contract.

53 Am.Jur. 2d § 27.

Straightforwardly, at common law, the duration of an employment contract shall be for the time expressed in the agreement. In this case, plaintiffs had a contract of employment. Plaintiffs' contract of employment was the collective bargaining agreement that Local 502 negotiated on their behalf with Motion Control. Appendix, Exhibit 1. The collective bargaining agreement very clearly contained a term expressing its duration: "This Agreement shall remain in effect from the date of execution hereof until midnight, June 27, 2003". Appendix, Exhibit 1, Article 21.

Very clearly, plaintiffs retained employment rights under the collective bargaining agreement even after March 16, 2002. For one, they maintained seniority rights, which under the collective bargaining agreement could only be terminated for several enumerated reasons, none of which including a plant closing. Appendix, Exhibit 1, Article 6, Section 7. These seniority rights governed the plaintiffs' right to be recalled to active service for Motion Control in the event Motion Control had re-opened the Ridgway facility during the term of the collective bargaining agreement. Appendix, Exhibit 1, Article 6, Section 11(d)(1), (2).

Admittedly, these rights had little to no value to plaintiffs as the prospect of Motion Control re-opening the Ridgway facility was greater than remote and never did come to pass. But nevertheless, plaintiffs' still held legal rights to employment by virtue of their collective bargaining agreement, which did not expire until June 2003. To simply assert, as Motion Control does, that plaintiffs' employment "terminated" when the plant officially closed on March 16, 2002, is inaccurate and unsubstantiated. Plaintiffs were permanently laid off with next to no

chance of ever being recalled, but their employment and seniority were legally preserved until the collective bargaining agreement expired in June of 2003.

Furthermore, plaintiffs were entitled to receive vacation benefits even after the plant closed on March 16, 2002. An arbitrator employed by Motion Control and Local 502 ruled that Motion Control was obligated, after the plant closing, to pay all employees vacation benefits that they had accrued up until March 16, 2002. Appendix, Exhibit 10. The Arbitrator further ruled that since Motion Control was not obligated to make these vacation benefits until after July 1, 2002, the vacation benefits payments had to be computed based on the wage rate that became effective on July 1, 2002 – months after the official plant closing. This demonstrates that plaintiffs' still held residual employment rights by virtue of the collective bargaining agreement that did not expire until June of 2003.

Accordingly, and contrary to Motion Control's position, plaintiffs' employment did not terminate on March 16, 2002. Their employment terminated when that contractual relationship expired by the express terms of the collective bargaining agreement. If plaintiffs became disabled prior to June 27, 2003, when the collective bargaining agreement expired, then they should be eligible for a disability retirement benefit.

### III.   CONCLUSION

For all the reasons stated herein, Plaintiffs respectfully request that this Honorable Court grant their Motion for Summary Judgment, and enter judgment declaring them to be eligible for disability retirement pension benefits from the Plan, and awarding them their attorneys' fees and costs.

Respectfully submitted,

JUBELIRER, PASS & INTRIERI, P.C.


BY: _____/s/ Jason Mettley_____
      Robert A. Eberle, Pa. I.D. #47359
      Jason Mettley, Pa. I.D. #81966
      219 Fort Pitt Boulevard
      Pittsburgh, PA 15222
      (412) 281-3850
      (412) 281-1985 (fax)
      rae@jpilaw.com
      jm@jpilaw.com